**UNITED STATES of America, Appellee,**

v.

**George WILSON, Appellant.**

**No. 85–2323.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 22, 1987.

Decided April 16, 1987.

---

1. The Honorable Clyde S. Cahill, Jr., United States District Judge for the Eastern District of Missouri.

R. Thomas Day, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

Michael W. Reap, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

George Wilson appeals from a final judgment entered in the District Court for the Eastern District of Missouri[1] upon a jury verdict finding him guilty of possession of a sawed-off shotgun in violation of 26 U.S.C. § 5681(d) (1982). For reversal, Wilson raised several issues, including the claim that the government used a disproportionate number of its peremptory challenges during voir dire to strike black prospective jurors in violation of his sixth amendment right to an impartial jury.

Following Wilson's trial and while his appeal was pending before this court, the United States Supreme Court decided the case of *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*). *Batson* substantially redefined the evidentiary burden placed on criminal defendants claiming an equal protection violation due to the prosecution's use of peremptory challenges. Under *Batson,* a defendant "may establish a prima facie case of purposeful discrimination in the selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 1722–23. The Supreme Court expressed no view on the merits of any sixth amendment arguments in *Batson, id.* at 1716 n. 4, yet we will apply the equal protection analysis of that case in this appeal, despite Wilson's reliance on a sixth amendment argument.

Following *Batson,* it remained to be determined whether the new standard announced in that case was to be given retroactive effect to cases pending on direct appeal. We originally issued a decision in this appeal holding that *Batson* would not be retroactively applied. Finding no other reversible error, we affirmed the judgment. Our opinion was filed November 14, 1986. Wilson's petition for rehearing and for rehearing en banc was denied and the mandate issued January 14, 1987. On January 13, 1987, the Supreme Court held that the rule announced in *Batson* is to be retroactively applied to all cases not yet final at the time of its decision on April 30, 1986. *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (*Grif-*

---

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

*fith* ). This category of cases includes Wilson's appeal.

Because this case was not yet final on April 30, 1986, and is thus subject to the holding of *Griffith,* we have, on our own motion, recalled the mandate and withdrawn the opinion previously filed in this appeal. *United States v. Wilson,* No. 85–2323 (8th Cir. Jan. 22, 1987) (order). We now order the judgment entered by the district court vacated and we remand the cause for further proceedings on the *Batson* issue only.

On remand, the district court is to determine whether a prima facie case of purposeful discrimination has been established by the prosecutor's use of peremptory challenges during voir dire to strike prospective black jurors. If so found, the district court is to require the prosecutor to provide a "neutral explanation" for the peremptory strikes. The defendant must then be given the chance to rebut the proffered explanation as a pretext.

If the district court concludes that a *Batson* violation has been established, Wilson is entitled to a new trial.[2] If the district court determines that no *Batson* violation has been proved, the district court should enter a new judgment upon the jury verdict of conviction.

Accordingly, the judgment of the district court is vacated and the cause remanded for further proceedings consistent with this opinion.

BRIGHT, Senior Circuit Judge, concurring.

This separate concurrence is prompted by language in the majority opinion stating:

> On remand, the district court is to determine whether a prima facie case of purposeful discrimination has been established by the prosecutor's use of peremptory challenges during voir dire to strike prospective black jurors. If so found,

the district court is to require the prosecutor to provide a "neutral explanation" for the peremptory strikes. The defendant must then be given the chance to rebut the proffered explanation as a pretext.

Maj. op. at 423. This language contains an internal inconsistency. If appellant George Wilson did not make a prima facie case of purposeful discrimination as shown by the record, we should affirm the conviction. But a prima facie case of discrimination was established by evidence that the government prosecutor utilized fifty percent of the challenges to remove three of the four prospective jurors. Following *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), with that showing we are compelled to reverse and remand this case to require that the prosecutor give a neutral explanation for the peremptory strikes.

In my view, the remand in this case might read as follows:

> If the District Court finds that the government's motivation for its peremptory challenges was constitutionally improper, it shall grant [George Wilson] a new trial. If, on the other hand, it finds that the government's motivation was not constitutionally improper, it shall reinstate the conviction, and appellant will be at liberty to file a fresh notice of appeal to seek review of the District Court's adverse finding.[1]

Because the majority and I disagree on whether appellant George Wilson has already established a prima facie case, I believe that my views, as previously expressed in a dissent to the majority opinion in this case and rendered prior to the Supreme Court's decision in *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), may bear upon the district court's determination on remand. That dissenting opinion recounts the litigation in this court relating to the peremptory striking of black jurors by prosecutors, in-

---

**2.** Such a determination by the district court is an interlocutory order and is not appealable until final judgment has again been entered.

**1.** This precise language comes from *United States v. Jimmie L. Wilson,* 815 F.2d 52, 52–53 (8th Cir. 1987).

cluding cases arising in the Eastern District of Missouri. I attach this dissent as an addendum.

## ADDENDUM

BRIGHT, Senior Circuit Judge, dissenting [from prior panel opinion, now withdrawn, dated November 14, 1986].

Notwithstanding this court's repeated warnings that the striking of black jurors solely on account of their race is impermissible, the Government prosecutor in the trial of George Wilson, a black male, used fifty percent of the prosecution's peremptory challenges to strike three of the four remaining black prospective jurors from the jury without any apparent cause other than race. The special efforts we have taken to curb and condemn this prosecutorial practice requires us to apply *Batson v. Kentucky*, — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) retroactively to this direct appeal from George Wilson's conviction.

### I.

In case after case, this court has decried the frequency with which we have been called upon to examine prosecutors' use of peremptory challenges to strike black jurors from the trials of black defendants. *See United States v. Andrade*, 788 F.2d 521 (8th Cir.1986); *United States v. Norton*, 780 F.2d 21 (8th Cir.1985); *United States v. Childress*, 715 F.2d 1313 (8th Cir.1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984); *United States v. Jackson*, 696 F.2d 578 (8th Cir. 1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *United States v. Nelson*, 529 F.2d 40 (8th Cir.) *cert. denied*, 426 U.S. 922, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976); *United States v. Carter*, 528 F.2d 844 (8th Cir.1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1745, 48 L.Ed.2d 206 (1976). In a recent case, we specifically noted the large number of appeals raising this issue that originated, like this one, from the Eastern District of Missouri. *Norton*, 780 F.2d at 23 n. 3.[1]

The number of appeals in which such challenges are made indicates that many federal prosecutors have been ignoring the Supreme Court's prohibition against the purposeful exclusion of black jurors from the juries of black defendants solely on account of their race. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Strauder v. West Virginia*, 100 U.S. 202 [303], 25 L.Ed. 664 (1880). Prosecutors seem to have been relying on the tough evidentiary standard of *Swain* to bar a defendant from successfully demonstrating error due to a prosecutor's conduct of peremptory striking of all or almost all potential black jurors. Prosecutors seem also to have been relying on *Swain*'s evidentiary standard to insulate themselves from being forced by the district court to provide the reasons for their use of peremptory strikes to eliminate black jurors.

In an effort to end this circumvention of the law, we long ago encouraged trial judges to use their supervisory powers to require that prosecutors discharge their duties "in a fair, even, and constitutional manner, and thus ensure that no potential juror is denied the privilege of serving upon a jury solely because of his race." *Nelson*, 529 F.2d at 43; *Andrade*, 788 F.2d at 524 (quoting *Nelson*, 529 F.2d at 43); *Childress*, 715 F.2d at 1321 (quoting *Nelson*); *Jackson*, 696 F.2d at 592–93 (quoting *Nelson*). We noted with approval in two recent cases the district judges' require-

---

**1.** The relevant cases cited by the *Norton* court are as follows: *United States v. Thompson*, 730 F.2d 82 (8th Cir.), *cert. denied*, 469 U.S. 2024, 105 S.Ct. 443, 83 L.Ed.2d 369 (1984); *United States v. Childress*, 715 F.2d 1313 (8th Cir.1983) (en banc), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984); *United States v. Capers*, 685 F.2d 249 (8th Cir.1982); *Hampton v. Wyrick*, 606 F.2d 834 (8th Cir.1979), *cert. denied*, 444 U.S. 1022, 100 S.Ct. 681, 62 L.Ed.2d 654 (1980); *United States v. Neal*, 527 F.2d 63 (8th Cir.1975), *cert. denied*, 429 U.S. 845, 97 S.Ct. 125, 50 L.Ed.2d 116 (1976); *United States v. Delay*, 500 F.2d 1360 (8th Cir.1974); *United States v. Pollard*, 483 F.2d 929 (8th Cir.1973); *cert. denied*, 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974). 780 F.2d at 23 n. 3.

In *Norton*, we warned prosecutors of the Eastern District of Missouri that we would be watchful of the practice of striking all or almost all potential black jurors from a jury without any apparent cause. 780 F.2d at 23.

ment that the prosecutor provide the reasons for the use of peremptory challenges to strike some, and in one case all, of the black prospective jurors in the sole case before him. *Andrade,* 788 F.2d at 524–25; *Jackson,* 696 F.2d at 593.

In essence, what we have done is encourage trial judges to take appropriate action to eliminate the unfair striking of black jurors by prosecutors exercising peremptory challenges. Trial judges, following suggestions of this court, have required that federal prosecutors explain the reasons for those peremptory challenges they exercise to strike a disproportionate number of black potential jurors in any one trial. *Batson* now demands such an explanation be given in these circumstances. As the majority notes, under *Batson* a defendant may establish a prima facie case of a constitutional violation through the prosecutor's use of a disproportionate number of peremptory challenges to strike black jurors in a single case. Once the prima facie case is made, the burden shifts to the other side and demands prosecutors provide a "neutral" explanation for these challenges.

With this background of warnings to prosecutors and suggestions to district judges, it becomes wholly proper that we apply *Batson* retroactively to direct appeals of criminal convictions such as the one before us. The relief which would be afforded Wilson is merely the same as that afforded the petitioner in *Batson.* Like the petitioner in *Batson* whose conviction was reversed and remanded under the new evidentiary standard announced by the *Batson* Court, we would reverse and remand Wilson's conviction, brought to us on direct appeal while *Batson* was pending in the Supreme Court. The majority, however, contends that the presence of reliance by law enforcement officers upon the old evidentiary standard of *Swain,* and the consequent impact upon the administration of

justice resulting from the application of a new evidentiary standard, compel its decision to deny *Batson* retroactive effect. *See Solem v. Stumes,* 465 U.S. 638, 643, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). I disagree.

First of all, so far as prosecutors have relied upon the evidentiary standard in *Swain* to shield themselves from being forced to relate their reasons for peremptorily striking black prospective jurors, their reliance is neither justified nor in good faith. This court's suggestions that district courts take appropriate action as well as the compliance by some district judges with these suggestions, as reflected in the *Andrade* and *Jackson* opinions, indicate that prosecutors have had ample notice that an explanation should be furnished or available when prosecutors act to peremptorily strike a disproportionate number of potential jurors who are black. Prosecutors' reliance on the *Swain* standard in the face of such warnings is not, as the majority argues, good faith, and thus the second criterion of *Stumes,* that of reliance by law enforcement officials, does not foreclose our giving *Batson* some retroactive effect. *See Stumes,* 464 U.S. at 643, 104 S.Ct. at 1341.[2] "Unjustified 'reliance' is no bar to retroactivity." *Id.* at 646, 104 S.Ct. at 1343.

Nor does the consideration of the third criterion of *Stumes,* the impact of the new rule on the administration of justice, bar the retroactive application of *Batson* to direct criminal appeals in this circuit. *Id.* at 643, 104 S.Ct. at 1341. The impact of the rule upon the administration of justice in our court system should be minimal. *Batson* requires only that prosecutors explain their reasons for peremptorily striking black prospective jurors. For the last decade, prosecutors in this circuit have been aware that they could be called upon

---

**2.** Thus I believe that the Supreme Court's characterization of the rule of *Batson* as "an explicit and substantial break with prior precedent", *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (per curiam), has no relevance as to whether, under the second criterion of *Stumes, Batson* should be given retroactive effect in this circuit. Certainly the *Batson*

rule is not a substantial break with prior precedent in our circuit. Moreover, while *Allen v. Hardy* held that *Batson* is not to be retroactively applied to collateral attacks on criminal convictions, 106 S.Ct. at 2881, *Allen* does not require that we refuse to apply the *Batson* rule to direct appeals of criminal convictions as in the present case.

to give this explanation and they therefore should have been prepared to do so. Moreover, since the Court's decision in *Strauder v. West Virginia* in 1880, no prosecutor has had the freedom to exercise such strikes solely because a prospective juror is black. All prosecutors must have good reason for peremptorily striking blacks from serving on the jury. In applying *Batson* retroactively to direct appeals, we only call upon prosecutors in the Eastern District of Missouri to provide an explanation for that conduct resembling a practice prohibited by the Supreme Court and by this circuit; an explanation which the prosecutor might have been called upon to give to the trial court.[3]

## II.

In conclusion, I would apply *Batson* retroactively to George Wilson's conviction. I would remand the present case to the trial judge so that he may require that the prosecutor provide a neutral explanation for the peremptory challenges used during the voir dire to strike black prospective jurors. If the prosecutor is unable to provide a neutral explanation for the strikes, thus leaving race as the reason, the district court should grant appellant a new trial by a jury that has not been skewed by the taint of racial prejudice in the jury selection process.

---

**3.** In rejecting the argument that its holding would create administrative difficulties, the Court in *Batson* stated, "In those states applying a version of the evidentiary standard we recognize today, courts have not experienced serious administrative burdens." 106 S.Ct. at 1724. The Court cited *People v. Hall*, 35 Cal.3d 161, 197 Cal.Rptr. 71, 672 P.2d 854 (1983), in which the California Supreme Court noted the absence of evidence demonstrating that the imposition on state trial judges of a standard similar to that imposed in *Batson* had created administrative burdens. *Batson*, 106 S.Ct. at 1724.